# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 29, 2015 Session

## IN RE: KAEDINCE M., ET AL.

### Appeal from the Juvenile Court for Knox County
### No. 105930     Timothy E. Irwin, Judge

---

### No. E2015-00763-COA-R3-PT-FILED-OCTOBER 19, 2015

---

This appeal concerns the termination of parental rights. The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Knox County ("the Juvenile Court") seeking to terminate the parental rights of Bridgetta M. ("Mother") to her minor children Greg S. and Kaedince M. ("the Children"). The Juvenile Court terminated Mother's parental rights to the Children on the grounds of wanton disregard and severe abuse. Mother appeals to this Court arguing only that it is not in the Children's best interest for Mother's parental rights to be terminated. We affirm the judgment of the Juvenile Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Michael J. Stanuszek, Knoxville, Tennessee, for the appellant, Bridgetta M.

Herbert H. Slatery, III, Attorney General and Reporter, and, Rebekah A. Baker, Senior Counsel, for the appellee, the Tennessee Department of Children's Services.

## OPINION

## Background

Kaedince M. was born to Mother in March 2006. Kaedince, having been found dependent and neglected as a result of Mother's homelessness and drug abuse issues, was placed with her maternal grandparents in 2009. Kaedince entered into state custody in June 2014 after Mother and the grandparents violated a court order restricting visitation by Mother. During this time, Mother whipped Kaedince to the point that she was bruised and her face was lacerated. In May 2014, Mother pled guilty to child abuse against Kaedince. Greg S. was born in October 2013 to Mother and Greg S., Sr. Mother tested positive for cocaine while pregnant with Greg. Greg was found dependent and neglected, and also was found to be a victim of severe abuse. Greg was placed with a relative.[1]

In September 2014, DCS filed a petition to terminate Mother's parental rights to the Children. This case was tried in February 2015. Mother had been incarcerated twice, once in early 2014 and then later from June 2014 through November 2014. Mother completed an inpatient drug treatment program upon her release. As of trial, Mother had been working full-time at Burger King for two weeks. Mother had married Greg's father, Greg S., Sr., by the time of trial. The two had been living together for around six years. Mother also completed a parenting class in May 2014. Mother testified that she had changed for the better. Both of the Children were thriving in foster care.

In March 2015, the Juvenile Court entered its detailed order terminating Mother's parental rights to the Children. The Juvenile Court stated in part:

1. On April 16, 2009, Respondent's mother filed a petition for custody of Kaedince alleging that Respondent was homeless and abusing drugs and that Respondent had left this child in the grandmother's care most of her life. Following a hearing on June 23, 2009, this Court issued an order awarding full custody of the child to the maternal grandparents upon a finding of dependency and neglect due to Respondent's "unresolved drug and alcohol abuse and lack of independent housing." Among other things, the order required that Respondent's visitation with the child be supervised; that in order to move to unsupervised visitation Respondent would have to

---

[1] We are affirming the termination of Greg S.'s father's parental rights to Greg S. in a separate appeal with a separate opinion to be filed concurrently with this opinion. The parental rights of Kaedince's father have, according to the Juvenile Court's order, already been terminated and are not at issue on appeal.

-2-

show verification that she had completed an alcohol and drug assessment and followed any recommendations given, had a legal source of income and appropriate housing, and exercised consistent appropriate supervised.

2. In the spring of 2013, the grandparents returned Kaedince to Respondent's care without the benefit of any court proceedings or proof. The child had apparently been having behavior problems and the custodians just decided it would be best to return her to her mother. Within a couple weeks Kaedince was the victim of physical abuse at Respondent's hands. On June 12, 2013, the Department obtained an *ex parte* order prohibiting any contact between Respondent and this child. That order was modified on August 14, 2013, to allow visitation at Parent Place and to require that Respondent submit to mental health and alcohol and drug assessments, follow up with any treatment recommended, submit to random drug screens, and complete parenting classes to learn appropriate discipline.

3. On October 8, 2013, Respondent gave birth to Greg [S.], Jr. Respondent had failed multiple drug screens for cocaine and marijuana during her pregnancy. She had not received any mental health counseling. Custody of that child was transferred temporarily to a maternal relative and then to the Department of Children's Services after the relative completed the requirements for kinship foster care.

4. Following a hearing on April 1, 2014, this Court found that Greg [S.], Jr., was the victim of SEVERE ABUSE, as defined in TCA 37-1-102(b)(23)(A) based on (a) the mother's knowledge of the potential dangers (including the risk of serious bodily injury or even death of the *in utero* child) of continued illicit substance abuse during her pregnancy with this child; and (b) despite that knowledge, the mother continued to abuse illicit substance while pregnant with this child. In reaching this conclusion, the Court relied on medical records establishing Respondent's repeated positive drug screens for cocaine during her pregnancy; warnings she received regarding the danger of cocaine use during pregnancy; and the child's positive cord test for cocaine.

5. In June 2014, the Department learned that Respondent was being allowed unsupervised contact with Kaedince in repeated violation of this Court's orders. At that point custody of Kaedince was also awarded to the Department of Children's Services and the child was placed with her brother. Following a hearing on June 16, 2014, this Court found, pursuant to T.C.A. § 37-1-102(b)(23)(A), that Kaedince [M.] was a victim of severe physical abuse by Respondent due to the extent of the injuries and the location of the injuries inflicted on the child in May 2013. Specific findings of fact included:

This Court previously found on June 23, 2009, that the child, Kaedince [M.], was dependent and neglected due to the mother's unresolved substance abuse issues and ordered that the mother's contact with the child be supervised by the child's custodians (the maternal grandparents) or a third party the maternal grandparents designated.

Near the end of April 2013, the maternal grandmother allowed Kaedince to reside with her mother due to behavior issues Kaedince was experiencing in school. On May 9, 2013, Kaedince was interviewed by Investigator Keith Johnson with the Knoxville Police Department and Child Protective Services Investigator Chermirra McGhee with the Tennessee Department of Children's Services following a referral with allegations that Kaedince had been physically abused by her mother. During the interview, Kaedince disclosed that she had been living with her mother for eleven (11) days and that her mother had given her a "whooping" with a long, thick stick that came from a bush because she had gotten into trouble at school for getting out of her seat. Kaedince disclosed that her mother had whipped her on both of her arms, legs, and face and that the whipping had occurred the previous day. Injuries were observed on Kaedince's face [a large gash approximately three (3) to four (4) inches long on the right side of her face and a small mark on the right side of her nose], both arms, and both legs [approximately ten (10) to fifteen (15) marks]. A scar is still visible on the child's face.

The mother was also interviewed and admitted that she had whipped Kaedince with a switch due to her behaviors at school. She stated that once she saw the scar on Kaedince's face, she stopped whipping her and put ointment on it so that it would heal. The mother was arrested and convicted of child abuse arising from this incident.

6. On March 13, 2014, Respondent entered a guilty plea to the charge of child abuse and was granted judicial diversion for a probation term of 364 days. She subsequently she [sic] failed a drug screen for cocaine and her diversion was revoked. On May 2, 2014, she was sentenced to "11/29" and released to probation on condition that she enter and complete IOP treatment at Peninsula. She again failed to comply, her probation was revoked, and she was taken back into custody on June 6, 2014. She remained incarcerated continuously until November 24, 2014.

7. Respondent was released from jail upon condition that she complete treatment at Buffalo Valley. She entered the program the next day and completed it. She testified that she had learned to identify her triggers (a bad environment and too much free time) and had made changes (getting a job at Burger King, hanging out with her mother, getting married to the man she's lived with for the past 6 years). She began individual therapy at Peninsula, although she had not released those records to the Department of Children's Services, and she asserted that she would be clean if screened on the day of trial. She had taken advantage of 4 out of 5 Friday visits with her children after returning from Buffalo Valley and believed that she could develop a good relationship with them if allowed more time. According to Respondent, "I've changed for the better. I know what I did then was bad. I want to be there for my kids."

8. Upon these facts the Court finds that Respondent has been found to have committed severe abuse against each of these children. Those orders are final and that finding is uncontested.

9. The Court further finds that Respondent was incarcerated when this petition was filed and that prior to her incarceration she engaged in conduct which exhibits a wanton disregard for the welfare of her children. As her mother testified, at that time it was "my way, not yours; it was all about her." She physically abused one child, she exposed the second child to illicit drugs *in utero*, she ignored the orders of this Court, and then she twice failed to take advantage of the generosity of the Knox County Criminal Court by continuing to use drugs and ending up back in jail when she would otherwise have had the opportunity to remain in the community.

We next quote from that portion of the Juvenile Court's order finding that it is in the Children's best interest for Mother's parental rights to be terminated:

1. This case, then, must be determined on the issue of best interest. The statutory factors this Court must consider are not a score card. Each factor does not get assigned a number of equal weight to be tallied. Has Respondent shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward these children? Yes, she committed brutality and physical abuse toward these children in two different ways. Emotional and psychological abuse go along with that. And neglect. She may now be doing everything she's been recommended to do but she has just begun. We don't know yet whether her efforts will result in a "lasting" adjustment. She has visited her children 4 times since the beginning of this year but lost the opportunity to see them during her incarceration. Her son doesn't know her at all, even preferring the company of the Department's case manager.

That is understandable, given that his kinship foster mother is the only parent he has ever known and that he has seen the case manager on a regular basis. The Court was unable to find that the conditions that led to removal still persist, given the testimony that Respondent is clean today and has been sober since being incarcerated, but that sobriety can really only be measured since she left required treatment at the end of November 2014. Assuming she has made changes in her life, she made those changes way, way too late. This Court cannot take a chance on the welfare of these children after only two months.

Mother filed a timely appeal to this Court.

## Discussion

Although not stated exactly as such, Mother raises one issue on appeal: whether the Juvenile Court erred in finding that it is in the Children's best interest for Mother's parental rights to be terminated.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct.

1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 WL 1660838, at *6 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The following grounds for termination of parental rights are relevant in this appeal. Tenn. Code Ann. § 36-1-102(1)(A)(iv) provides:

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; . . . .

Tenn. Code Ann. § 36-1-102 (1)(A) (iv) (Supp. 2015).

In pertinent part, Tenn. Code Ann. § 36-1-113(g) provides:

> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4) (Supp. 2015).  As relevant, Tenn. Code Ann. § 37-1-102 provides:

> (21) "Severe child abuse" means:
>
> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
>
> (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).
>
> (B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;
>
> (C) The commission of any act towards the child prohibited by §§ 39-13-502 – 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or
>
> (D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring;

Tenn. Code Ann. § 37-1-102(b) (21) (2014).

The following statutory factors are to be considered by courts when determining whether termination of parental rights is in the child's best interest:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113 (i) (Supp. 2015).

On appeal, Mother does not contest the grounds for termination of her parental rights. We nevertheless have reviewed the grounds for termination. The evidence in the record is clear and convincing that Mother's pre-incarceration conduct constituted wanton disregard for the welfare of the Children, and the severe abuse findings against Mother are final and unchallenged. We find and hold that clear and convincing evidence establishes the grounds of wanton disregard and severe abuse with respect to Mother.

We now address whether the Juvenile Court erred in finding that it is in the Children's best interest for Mother's parental rights to be terminated. The crux of Mother's argument is that the Juvenile Court overlooked Mother's improvement in various areas and failed to properly weigh all of the best interest factors. As this Court has noted:

Ascertaining the child's best interest in a termination proceeding is a fact intensive inquiry requiring the Court to weigh statutory factors as well as any other relevant factors. The child's best interest must be viewed from the child's, rather than the parent's perspective.

Ascertaining the child's best interest does not call for rote examination of each of the factors in Tenn. Code Ann. § 36-1-113(i) and then a determination of whether the sum of the factors tips in favor of or against the parent. Depending upon the circumstances of a particular child and a particular parent the consideration of one factor may dictate the outcome of the analysis.

*In re the Adoption of D.P.E.*, 271 S.W.3d 670, 676 (Tenn. Ct. App. 2008) (citations omitted).

We recognize that the evidence in the record is that Mother had obtained a job and been sober for a short period of time at the time of trial. Nevertheless, the key

phrase here is whether a "lasting adjustment" has been made.  The Juvenile Court found that, despite Mother's late stage commendable gains, there was insufficient evidence that the changes would hold.  Likewise, we find that the record does not support a finding that Mother has made a lasting adjustment in her lifestyle as the evidence is clear and convincing otherwise.  As found by the Juvenile Court, Mother's efforts at this point simply are too late.

We emphasize that, at this stage of review in a parental rights case, with grounds having been found for termination, the second question in the two-part process is whether termination of parental rights is in the child's best interest, not the parent's best interest.  Decisions regarding the termination or preservation of parental rights are neither a punishment to be meted out nor an award to be rendered to a parent.  Even if a parent has made a number of commendable changes to his or her lifestyle, this alone may not be sufficient to establish that it is in the child's best interest for the parent to retain his or her parental rights, especially under circumstances such as those of the instant case where the parent's positive change in behavior occurs at the eleventh hour.  *See In re Johnny J.E.M.*, No. E2011-02192-COA-R3-PT, 2012 WL 1929802, at *13 (Tenn. Ct. App. May 29, 2012), *Rule 11 appl. perm. appeal denied August 22, 2012*.  In the meantime, the evidence in the record on appeal is clear and convincing that the Children are thriving in foster care.  A change of caretaker at this point likely would prove detrimental to the Children's best interest.

We find and hold, as did the Juvenile Court, that clear and convincing evidence establishes the grounds of wanton disregard and severe child abuse in order to terminate Mother's parental rights to the Children, and the evidence is clear and convincing that termination of Mother's parental rights is in the Children's best interest.  We affirm the judgment of the Juvenile Court terminating Mother's parental rights to the Children.

### Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below.  The costs on appeal are assessed against the Appellant, Bridgetta M., and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

-11-